UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABEL BEL MONTEZ, individually and as guardian ad litem for I.G. and J.G., minors, individually and as successors in interest to Decedent JOSEPH GARCIA, JR.; and JOSEPH GARCIA, SR.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF STOCKTON; BLAIR ULRING in his official capacity as CHIEF OF POLICE FOR THE CITY OF STOCKTON; MARK MARQUEZ, individually and in his official capacity as a police officer for the CITY OF STOCKTON; TIMOTHY MCDERMOTT, individually and in his official capacity as a police officer for the CITY OF STOCKTON, DOES 3-100, inclusive,<br><br>Defendants. | No. 2:10-cv-03149-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

In this case, Plaintiffs allege that Stockton police officers used excessive force when detaining Joseph Garcia, Jr., in an encounter that ultimately led to Garcia's death. Defendants now move for summary judgment, contending that the undisputed evidence shows that the force the officers used was reasonable. ECF No. 67. Because Plaintiffs

1

fail to show a genuine issue of material fact that would challenge Defendants' version of events, that motion is GRANTED.[1]

**BACKGROUND**

On the evening of October 3, 2009, Garcia was high on PCP and arrested for public intoxication in front of the homeless shelter where he resided. Stmt. of Undisputed Facts ("SUF"), ECF No. 67-2, ¶ 9. Defendant police officers Mark Marquez and Timothy McDermott arrested Garcia in response to a call from the shelter. Id. ¶ 3. They placed Garcia in a police car and drove him to the San Joaquin County Jail. Id. ¶ 10. While in the car, Garcia became agitated, kicking the front seat, yelling and screaming. Id. ¶¶ 10–13, 16. At one point, he lunged at the side of the car and struck his head on the metal bars installed to prevent the side windows from being broken. Id. ¶ 17. This caused a contusion on his forehead. Id. ¶ 18. At the jail booking lobby, the jail nurse directed the officers to take Garcia to the hospital for a pre-booking medical clearance. Id. ¶ 23.

The officers, however, struggled to get Garcia back into the police car because Garcia actively resisted and tried to escape the officers' grasp. Id. ¶¶ 24, 26, 31. The officers attempted to place Garcia against the car, but Garcia tensed his body so that he would not bend at the waist. Id. ¶ 29. McDermott radioed for someone to bring a "Safe WRAP" device to subdue Garcia. Id. ¶ 33. While waiting for the restraint device, Garcia pushed against the officers, edging them away from the car. Id. ¶ 34. The officers determined that it was necessary to bring Garcia down to the ground to prevent his escape attempts, which they did "in a slow and controlled manner." Id. ¶¶ 37, 39. They rolled Garcia onto his stomach, but he continued to struggle. Id. ¶¶ 41, 46.

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

2

McDermott placed his right knee on Garcia's right shoulder blade and put Garcia in a rear wrist lock control hold. Id. ¶¶ 44–45. Garcia was kicking his legs, hitting both the concrete and the undercarriage of the police car. Id. ¶¶ 46–47. Marquez pulled Garcia's legs out from under the car, bending Garcia's feet toward his buttocks, but Garcia knocked Marquez to the ground. Id. ¶¶ 47–48. Marquez then kneeled next to Garcia and obtained control of his legs by holding them to his chest. Id. ¶ 49.

Less than two minutes after the struggle began, Garcia suddenly stopped screaming and struggling, and his body went limp. Id. ¶ 51, 54. In response, the officers rolled Garcia onto his back. Id. ¶¶ 55–56. Garcia was not breathing so the officers performed CPR until they were relieved by emergency medical personnel. Id. ¶¶ 57, 61. Garcia was then taken to the hospital where he was pronounced dead. Id. ¶¶ 61–62.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying the summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden." In re Brazier Forest Prods. Inc., 921 F.2d 221, 223 (9th Cir. 1990). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court

explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Fourth Amendment Claim

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons . . . , against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. See Graham v. Connor, 490 U.S. 386, 395 (1989); Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003). The crucial inquiry in excessive force cases is whether the force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397; Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).

Calculating the reasonableness of the force used "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing interests at stake." Graham, 490 U.S. at 396. The court "first

assess[es] the quantum of force used" then "measure[s] the governmental interests at stake by evaluating a range of factors." Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007). In Graham, the Supreme Court listed several factors to be considered in assessing reasonableness. See 490 U.S. at 396. However, the overall reasonableness calculus is not limited to these factors. "Rather, [the court] examine[s] the totality of the circumstances and consider[s] 'whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994)).

Furthermore, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Thus, "[a] reasonable use of deadly force encompasses a range of conduct, and the availability of less intrusive alternatives will not render conduct unreasonable." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010). That said, "[t]he principle that summary judgment should be granted sparingly in excessive force cases 'applies with particular force where the only witness other than the officer[s] was killed during the encounter.'" Collender v. City of Brea, 605 Fed. App'x 624, 627 (9th Cir. 2015) (quoting Gonzalez v. City of Anaheim, 747 F.3d 789, 795 (9th Cir. 2014) (en banc)). At the same time, summary judgment is appropriate in favor of defendant officers if "the evidence does not undermine the officers' account" of the encounter. Gregory v. County of Maui, 523 F.3d 1103, 1107 (9th Cir. 2008).

Defendants here claim the force used was reasonable because they used only the minimal force necessary to subdue Garcia, who was actively resisting the officers and attempting to escape. See Defs.' P. & A. in Supp. of Mot. for Summ. J. ("Defs.' MSJ"), ECF No. 67-1, at 7–8. The officers note that they initially attempted to bring Garcia under control by leaning him against the trunk of the police car, but that this was unsuccessful. While waiting for the arrival of a Safe WRAP device, Garcia continued to resist, pushing the officers away from the car. It was only then that the officers decided to bring Garcia to the ground, which was done in a controlled manner. Garcia resisted

even while on the ground, managing to knock Marquez to the ground. Marquez then grabbed Garcia's legs while McDermott placed his knee on Garcia's shoulder without pressing his full weight against Garcia. The struggle as a whole lasted less than two minutes before Garcia went limp and the officers began performing CPR.

Plaintiffs agree that "the manner and quantum of force used by the officers is veritably undisputed." Pls.' Opp'n to MSJ, ECF No. 68, at 12. But Plaintiffs argue that "[t]he actual dispute is whether the Defendant Officers' action caused Mr. Garcia to asphyxiate to death." Id. The medical examiner performed an autopsy on Garcia, and determined the cause of death to be cardiac arrhythmia brought on by hypertrophic cardiomyopathy. Lawrence Dep., ECF No. 67-3, Ex. 1, at 31:25–32:8. He also opined that the struggle with the officers, combined with the high level of PCP in his system, aggravated Garcia's underlying heart disease, causing the fatal sudden cardiac arrest. Id. at 46:2–9. Plaintiffs' expert, in contrast, opined that Garcia "died as a result of positional asphyxia caused by the officer[s'] restraint." Pls.' Opp'n to MSJ, at 9.

Regardless of the exact cause of Garcia's death, Plaintiffs have not provided any evidence that creates a genuine dispute over the amount of force the officers used in subduing Garcia. Plaintiffs rely heavily on Drummond in arguing that the force the officers used was excessive under the Fourth Amendment. See Pls.' Opp'n to MSJ, at 15. However, Drummond is unlike the instant case. In Drummond, the Ninth Circuit found two police officers violated the Fourth Amendment when they both pressed their weight against a "compliant, prone, and handcuffed individual[']s" neck and torso as he made "pleas for air." 343 F.3d at 1059. Here, Garcia was not compliant, but actively resisting the officers, managing to knock one of them to the ground during the struggle. The officers also did not put their full weight against Garcia. Instead, only one officer

///

///

///

///

7

placed one knee—keeping the other leg on the ground—on Garcia's shoulder. Moreover, Garcia, though screaming, was not pleading for air.[2]

Instead, this case is more like Gregory, in which the Ninth Circuit found no Fourth Amendment violation. In Gregory, the defendant officers gradually increased the amount of force used until they ultimately pinned the decedent to the ground so that they could place handcuffs on him. 523 F.3d at 1105. As is the case here, the decedent in Gregory was under the influence of drugs at the time of the confrontation, was suffering from underlying severe heart disease, and died from a heart attack. Id. The police officers did not violate the Fourth Amendment by using "a hold around [the decedent]'s head and neck to restrain him" after pinning him to the ground, despite the fact that the decedent "repeatedly shouted that he could not breathe." Id. The officers in Gregory did not violate the Fourth Amendment despite using more force than did the officers in the instant case.

Though the encounter tragically resulted in Garcia's death, it cannot be said that Defendants used excessive force based on the evidence before the Court. Garcia actively resisted the officers and attempted to escape, and because of that some amount of force was required to subdue him. The officers then used progressively more force in their attempts to do so. In eventually holding Garcia prone on his stomach, the officers never placed their full weight on Garcia, nor did they have any indication that Garcia could not breathe. Furthermore, the officers held Garcia on the ground for less than two minutes. Thus, regardless of the precise cause of death, Plaintiffs have not demonstrated that any material fact is in dispute that would preclude summary judgment in Defendants' favor. Defendants' Motion is therefore GRANTED on Plaintiffs' Fourth

///

---

[2] Plaintiffs make much of their contention that "[t]he actions the Defendant Officers describe as lifting his head resisting them are consistent with someone lifting their head trying to breathe." Pls.' Opp'n to MSJ, at 8. Whether or not such movements are consistent with the inability to breathe, the more relevant question is whether that movement would alert a reasonable officer that Garcia was unable to breathe. Absent any other relevant evidence and given Garcia's continuous resistance to the officers, the Court finds that not to be a reasonable inference.

Amendment claims—both their first cause of action (wrongful death) and their second cause of action (survival action).

### B. Fourteenth Amendment Claim

Plaintiffs also assert Fourteenth Amendment claims based on the deprivation of their relationship with Garcia. "This substantive due process claim may be asserted by both the parents and the children of a person killed by law enforcement officers." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998). "The concept of 'substantive due process,' . . . forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "The substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Arres v. City of Fresno, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *14 (E.D. Cal. Jan. 26, 2011) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)).

"In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical." Hayes v. County of San Diego, 736 F.3d 1223, 1230 (9th Cir. 2013). If actual deliberation by an officer is practical, that officer's "deliberate indifference" may suffice to "shock the conscience." Id. Yet, where deliberation is impractical and the officer is forced to make a "snap judgment" due to a rapidly evolving situation, only conduct "with a purpose to harm unrelated to legitimate law enforcement objectives" may suffice to "shock the conscience." Id.

Plaintiffs here claim that "the Defendant Officers had plenty of time to assess the situation with Mr. Garcia," viewing the entire interaction between Garcia and the officers as a whole, starting from Garcia's original arrest at the homeless shelter. Pls.' Opp'n, at 16. The relevant time frame, however, began when Garcia became combative and

resisted the officers' attempts to place him back in the police car. It was at that point that the officers began using increased force in response to the increased resistance. See Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010) (finding the relevant time frame beginning only when "the situation evolved"). The undisputed evidence here indicates that there was no time during the relevant two minutes for the officers to "deliberate" their actions, making the "purpose to harm" standard the applicable one. See Porter v. Osborn, 546 F.3d 1131, 1139 (9th Cir. 2008) (applying the "purpose to harm standard" to a five-minute long altercation between a suspect and officers where the officers "faced an evolving set of circumstances that took place over a short period of time necessitating 'fast action'").

Defendants contend that there is no evidence to support finding the officers harbored a purpose to harm. Defs.' MSJ, at 15–16. In response, Plaintiffs only conclusorily contend that the purpose to harm standard was met because "[t]here was simply no basis for the Defendant Officers to exert an amount of force on Mr. Garcia that literally compressed the life out of him." Pls.' Opp'n, at 16. Given that the undisputed evidence does not show that the officers used unreasonable force, it cannot be said that there is any evidence that they acted with a purpose to harm. Defendants' Motion is therefore GRANTED on Plaintiffs' Fourteenth Amendment claim.

### C. Monell Claim

Municipalities are liable under so-called Monell claims for constitutional violations committed by their employees if the violations resulted from a "policy or custom" of the municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 695 (1978). Because Plaintiffs have failed to put forth sufficient evidence to show that there was any underlying constitutional violation, their Monell claim also fails, and Defendants' Motion is GRANTED on that claim.

///

///

///

### D. State Law Claims

Finally, Defendants move for summary judgment on Plaintiffs' state law claims. Plaintiffs allege claims under California Civil Code § 52.1 and common law claims for assault and battery as well as negligence.

First, when a plaintiff "asserts no California right different from the rights guaranteed under the Fourth Amendment, . . . the elements of the excessive force claim under § 52.1 are the same as under § 1983." Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013). Here, Plaintiffs' § 52.1 claim is premised entirely on the alleged violation of the Fourth Amendment. Because their Fourth Amendment claims fail, so too does their § 52.1 claim.

Second, "it is clear that an assault and battery claim against a police officer requires that unreasonable force be established." Nelson v. City of Davis, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010). Because Plaintiffs have failed to put forth evidence to create a genuine dispute over whether the officers used unreasonable force, their assault and battery claim also fails.

Third, Defendants contend that the failure of Plaintiffs' Fourth Amendment claims similarly precludes their negligence claim. Defs.' MSJ, at 18. California negligence law, however, creates liability "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." Hayes, 57 Cal. 4th at 686. "Thus, negligence claims under California law encompass a broader spectrum of conduct than excessive force claims under the Fourth Amendment." Mulligan v. Nichols, 835 F.3d 983, 991 (9th Cir. 2016). Regardless, Plaintiffs fail to identify any facts showing that the officers violated any duty that would establish a claim of negligence. Thus, Defendants' Motion is GRANTED on all of Plaintiffs' state law causes of action.

///

///

///

**CONCLUSION**

For the reasons provided, Defendants' Motion for Summary Judgment, ECF No. 67, is GRANTED in full. Plaintiffs have provided no evidence to create a genuine dispute over the amount of force used by Defendants in subduing Garcia, and the officers' version of events indicates that the force they used was not excessive.

IT IS SO ORDERED.

Dated: June 16, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE